MAX FISCHBEIN, PETITIONER-DEFENDANT, v. REAL ESTATE MANAGEMENT, INC., AND COMMERCIAL CASUALTY INSURANCE COMPANY, RESPONDENTS-PROSECUTORS.

Argued January 20, 1944—Decided May 3, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the prosecutor, *Henry M. Grosman* (*Isidor Kalisch,* of counsel).

For the defendant, *David Roskein* (*Harry Cohn,* of counsel).

The opinion of the court was delivered by

COLIE, J. The writ of *certiorari* allowed in this matter brings up for review a judgment of the Essex County Court of Common Pleas affirming a determination and award of the Workmen's Compensation Bureau which allowed compensation for temporary and permanent disability, together with certain other expenses, to one Max Fischbein.

The question is whether the petition in the Compensation Bureau was filed within time. The determination of that question depends upon whether payments by the employer, under the facts here exhibited, from the date of the alleged accident for a period of almost three years, can be considered. as "payment made in accordance with the provisions of article 2" of the Workmen's Compensation Act.

Max Fischbein was employed by Real Estate Management, Inc., as manager of its branch office. His duties consisted in supervising properties, collecting rents, inspecting and seeing that they were kept in good condition. On April 17th, 1939, while ascending the stairway between the third and fourth floors of an apartment house under his supervision, he was seized with a sharp pain in his chest, causing him to cease the work which he was then doing. Later in the day, he undertook to visit another apartment house and while so doing, had a further seizure. He was taken to a doctor and thence to the hospital where his condition was diagnosed as acute coronary occlusion. He was confined to the hospital for three weeks and subsequently to his bed at home for four more weeks and thereafter was allowed to and did spend an hour or so a day at his office. He continued this limited work until January, 1941, when, on advice of his physician, he went to Florida. The trip was of no avail from the point of view of health and at the end of three weeks, he returned and was thereafter bedridden for three months. In May, 1941, he resumed the practice of going to his office for a few hours each day and continued doing so until January of 1942 when he was notified by his employer that his services were terminated. During the period from April 17th, 1939, until January 30th, 1942 (two years and nine months) the employer paid him his usual salary of $75 a week, together with some hundreds of dollars as commissions on rentals. At no time did Mr. Fischbein make any request of or demand upon the employer for payment of compensation or medical expenses. The vice-president of the employer, a Mr. Morrow, testified that the salary of $75 a week continued to be paid, not as compensation for an accident arising out of the employment but "because the man was sick, and as a matter of com-

pany policy we paid employees that were sick." On April 11th, 1942, three years, lacking six days, from the date of the accident, a petition was filed in the Workmen's Compensation Bureau. A motion was made to dismiss the petition because it was filed out of time. This motion was denied; the matter went to hearing and an award was made and later sustained by the Court of Common Pleas.

The pertinent provision of the Compensation Act is *R. S.* 34:15–51 which reads in part as follows: "Every claimant for compensation * * * shall * * * file a petition * * * within two years after the date on which the accident occurred, or in case an agreement for compensation has been made between the employer and the claimant, then within two years after the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been paid by the employer, then within two years after the last payment of compensation. Any payment made in accordance with the provisions of article 2 of this chapter (*R. S.* 34:15–7, *et seq.*) shall constitute an agreement for compensation."

No petition was filed within two years of April 17th, 1939, nor was any agreement for compensation, written or oral, entered into between the employer and the employee. If the remedy provided for by the act is to be preserved to the employee, it must be on the basis that the payments of $75 a week are comprehended in the language that "any payment made in accordance with the provisions of article 2 of this act shall constitute an agreement for compensation." Whether or not the payments are to be so considered is a question of fact. Despite the finding of the two lower tribunals in the affirmative, it is our duty to correct that finding of fact if, upon consideration of the evidence, we conclude it to be erroneous. *Lazzio* v. *Primo Silk Co.*, 114 *N. J. L.* 450; *affirmed*, 115 *Id.* 506. We are not unmindful of our duty to construe liberally this beneficent legislation, but this does not warrant us in a construction that conflicts with the language of the statute. The continued payment of the weekly salary to Fischbein was made by his employer in conformity with its policy to pay employees who were sick. There is no sugges-

tion that the payments were ·made with any thought in mind that they were made in accordance with the Compensation Act. That this is so with regard to Fischbein is borne out by his having paid the bills for medical care over the period of his illness and his never having requested the employer to do so. As to the employer, he says the payments were made in conformity with the company policy.

A significant fact in determining whether these payments are in accordance with section 2 is the fact that they continued at the rate of $75 a week, a sum far in excess of the maximum of $20 a week to which the employee would have been entitled under the act.

There is no case in New Jersey directly in point, but great reliance is placed upon the following language in the case of *Betsy Ross Ice Cream Co.* v. *Greif*, 127 *N. J. L.* 323, in which the court said: "Our problem is whether, by legislative enactments, a purpose has been disclosed to extend the term to file the petition because of the payment for medical aid. The legislative meaning seems clear to put all kinds of employee aid on the same basis. * * * There seems no reason if a payment be made, which could have been required under the act, to limit the period in which a petition may be filed by a judicial construction which defeats the interests of the workman."

With this statement we are in accord, but we do not think it controlling in the instant case because there the employer paid for a surgical belt, bandages and tape, all of which could have been required under the act, whereas in the instant case, the employer paid $75 a week for a period of two years and nine months, when, under the act, the most that he could have been required to pay was $20 per week.

It is argued that unless these payments are held to toll the running of the two year limitation, the door will be open to unscrupulous employers to lull injured employees into a sense of security until their remedy under the Workmen's Compensation Act has been lost to them by passage of time. That is not this case. This record is barren of a suggestion that the employer was guilty of any such motive. The gravity of the asserted danger is doubtful since the courts would· be

quick to invoke the doctrine of estoppel where the evidence indicated an attempt to lull the employee into a false sense of security.

Under the facts of this case we hold that the continued payment of salary by the employer was not made in accordance with the provisions of article 2 so as to constitute an agreement for compensation.

The judgment under appeal is reversed, with costs.